OPINION OF THE COURT
Memorandum.
Order modified by deleting the portion of the order which granted plaintiff summary judgment; as so modified, affirmed without costs.
In this action to recover $969.61 in assigned first-party no-fault benefits, defendant insurer denied plaintiff health provider’s claim on the ground that the eligible injured person failed to appear for independent medical examinations (IMEs) which defendant scheduled before plaintiff filed its statutory claim forms. Defendant moved for summary judgment contending that its proof of plaintiff’s assignor’s nonappearance established a defense to the action.
The insurance regulations provide for IMEs as part of an insurer’s entitlement to “additional verification” following the insurer’s receipt of a provider’s statutory claim forms in order to determine, inter alia, the medical necessity of the health benefits provided the injured person (11 NYCRR 65.15 [d] [3], now 11 NYCRR 65-3.5 [d]; see also 11 NYCRR 65.15 [g] [1], now 11 NYCRR 65-3.8 [a] [1] [IME “verification” deemed received “on the day the examination was performed”]). An insurer need not pay or deny a claim until demanded verification is provided (11 NYCRR 65.15 [g] [1] [i]; [2] [iii], now 11 NYCRR 65-3.8 [a] [1]; [b] [3]; Montefiore Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 9 AD3d 354 [2004]; Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 534 [2004]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]). Where an eligible injured person fails to comply with an insurer’s timely postclaim IME verification *20 request, the insurer’s time to respond to the claim does not begin to run, which may entitle the insurer to dismissal of the action seeking no-fault benefits (Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533 [2004], supra; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568 [2004], supra; St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338, 340 [2002]; see also 11 NYCRR 65.15 [g] [2] [i], now 11 NYCRR 65-3.8 [b] [1]).
The first question presented is whether an insurer has a right to an IME following an oral or written notice of claim (11 NYCRR 65.15 [c] [1], [2], now 11 NYCRR 65-3.4 [a], [b]) and prior to the insurer’s receipt of the statutory claim forms or their functional equivalent (11 NYCRR 65.15 [d] [1], [5], now 11 NYCRR 65-3.5 [a], [f]), the event which, under the regulations, triggers the verification process (11 NYCRR 65.15 [d] [1], now 11 NYCRR 65-3.5 [a]). If such a right exists, we must determine the consequences, if any, of the injured person’s failure to attend an IME sought before any claim form has been submitted.
The insurance regulations provide, in the mandatory personal injury protection endorsement, which is independent of the verification protocols, that “[t]he eligible injured person shall submit to medical examination . . . when, and as often as, the Company may reasonably require” (11 NYCRR 65.12 [e], now 11 NYCRR 65-1.1 [d] [emphasis added]). In light of this broad language, and because this provision is included in the mandatory endorsement and not in the verification protocols, there appears to be no reason to preclude an insurer from requesting an IME prior to its receipt of the statutory claim form. This analysis is particularly reasonable given the fact that the insurer, upon receipt of an oral or written notice of claim, is under an obligation to commence the claim processing procedure (see 11 NYCRR 65.15 [b], [c] [l]-[2], now 11 NYCRR 65-3.3, 65-3.4 [a]-[b]). Accordingly, we conclude that an insurer is entitled to request an IME upon the receipt of a notice of claim, whether orally or in writing. This conclusion was implicit in Millennium Med. Diagnostics v Liberty Mut. Ins. Co. (2001 NY Slip Op 40654[U] [App Term, 2d & 11th Jud Dists 2001], affd 306 AD2d 388 [2003]) which also involved an IME sought before the submission of the statutory claim forms (see also Informal Op, NY State Ins Dept, Apr. 12, 2002). In so concluding, we recognize the importance of a timely held IME in the detection of fraudulent claims, the sharply rising incidence of which has drawn attention from law enforcement agencies and the courts *21 (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 867 [2003]), and has stimulated significant revisions in the insurance regulations.
However, the right to an IME at this juncture is not afforded by the verification procedures and timetables (see 11 NYCRR 65.15 [d], [e], [g], now 11 NYCRR 65-3.5, 65-3.6, 65-3.8), because 11 NYCRR 65.12 (e) (now 11 NYCRR 65-1.1 [d]) is not, on its face or contextually, a “verification” provision, and because the detailed and narrowly construed verification protocols are not amenable to application at a stage prior to submission of the claim form (but see Bronx Med. Servs. v Windsor Ins. Co., 2003 NY Slip Op 50885[U] [App Term, 1st Dept 2003]). Such a rewriting of the regulations is a matter for the Legislature or the Insurance Department, and indeed, a comprehensive response to the Court of Appeals’ call for the enactment of “more synchronized provisions in the highly technical and regulated . . . no-fault universe[ ]” is awaited (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 201 [1997]).
Having determined that the insurer has a right to request an IME prior to the submission of the claim form, we now turn to the second inquiry: What are the consequences of the injured person’s failure to attend an IME sought before the statutory claim form is submitted? As an insurer’s rights and/or remedies upon nonreceipt of matter sought pursuant to the postclaim verification procedures (11 NYCRR 65.15 [g], now 11 NYCRR 65-3.8; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d at 570) are inapplicable (but see Bronx Med. Servs. v Windsor Ins. Co., 2003 NY Slip Op 50885[U] [2003], supra), the consequences of an insured’s failure to attend a preclaim IME must be sought in the general principles of no-fault claims determinations.* Generally, a plaintiff health provider’s proof of a properly submitted statutory claim form, or its substantial equivalent, establishes a prima facie case of medical necessity on a plaintiff’s motion for summary judgment (Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists 2003]; see also Damadian MRI in Elmhurst v Liberty Mut. Ins. Co., 2 Misc 3d 128[A], *22 2003 NY Slip Op 51700[U] [App Term, 9th & 10th Jud Dists 2003]). The burden then shifts to defendant who, if not precluded, may rebut the presumption and establish the lack of medical necessity by submitting proof, such as a detailed peer review report or the results of an IME, that the health benefits provided were not medically necessary (Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [2003], supra; see also Damadian MRI in Elmhurst v Liberty Mut. Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51700[U] [2003], supra). However, when an insurer timely asserts in its claim denial form an injured person’s failure to comply with a reasonable and proper preclaim IME request, and establishes such failure in admissible form in opposition to a plaintiffs motion for summary judgment, the presumption of medical necessity which attaches to the claim form is rebutted. While not establishing the lack of medical necessity so as to warrant reverse summary judgment in its favor, such proof defeats the motion. As the courts disapprove of a movant seeking to submit proof for the first time in a reply paper (see Ritt v Lenox Hill Hosp., 182 AD2d 560 [1992]), a plaintiff should not be permitted to submit its independent proof of medical necessity for the first time at such juncture. Of course plaintiff, having been alerted to the insurer’s assertion of the eligible injured person’s failure to attend such IME in the claim denial form, may support its motion with proof of medical necessity (independent of the presumption of medical necessity that attaches to the claim form), or may explain the eligible injured person’s failure to attend the IME by offering a valid excuse for such nonappearance, or proof that, under the circumstances, the IME request was unreasonable and, thus, not authorized by 11 NYCRR 65.12 (now 11 NYCRR 65-1.1). In such case, plaintiff may be entitled to prevail on its summary judgment motion should defendant’s opposition papers otherwise fail to raise a triable issue of fact.
Where, as here, an insurer moves for summary judgment (or cross-moves for summary judgment) to dismiss the action on the sole ground that the eligible injured person failed to appear for an IME which was reasonably and properly requested prior to its receipt of any claim form (assuming such ground was preserved by having been previously asserted in the insurer’s denial of claim form), the insurer’s motion will not warrant a dismissal of the action, since such ground, as noted above, does not establish a lack of medical necessity. Rather, its effect is only a procedural one: it negates the presumption of medical *23 necessity which otherwise attaches to plaintiffs claim forms, thereby raising a triable issue as to the medical necessity of the health benefits provided (Millennium Med. Diagnostics v Liberty Mut. Ins. Co., 2001 NY Slip Op 40654[U] [App Term, 2d & 11th Jud Dists 2001], affd 306 AD2d 388 [2003], supra). For plaintiff to ultimately prevail in its action, it must then independently establish medical necessity by admissible evidence at trial. Of course, plaintiff may successfully oppose such motion by the insurer and avoid the negation of the presumption of medical necessity which attaches in the first instance to its claim form by establishing in its opposition papers that the eligible injured person’s failure to attend the IME was excusable or that the request was unreasonable in light of all the surrounding circumstances existing at the time of the request.
Since, in the instant case, it was uncontroverted that the eligible injured person failed to comply with a preclaim form IME request, the reasonableness of which was not challenged, plaintiff should not have been granted summary judgment. However, defendant’s motion for summary judgment was properly denied inasmuch as questions of fact exist, including whether the benefits provided were medically necessary.

 We are aware that the mandatory personal injury protection endorsement (11 NYCRR 65-1.1 [d]) bars an action against an insurer “unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.” However, we are of the opinion that this provision applies solely to an insured’s cooperation with the postclaim verification protocols with regard to IMEs.