*429 OPINION OF THE COURT
Jack M. Battaglia, J.
These two actions for first-party no-fault benefits raise similar issues arising from the insurer’s denial of the claims because of the respective assignors’ failure to appear for preclaim medical examinations. In action No. 1, Foster Diagnostic Imaging, EC. seeks payment of a bill for $902.28 for an MRI of the cervical spine of its assignor, Correna Cosine. In action No. 2, Ocean Transportation, Inc. seeks payment of a bill for $550 for transportation rendered to its assignor, Bryan Woodriffe. Defendant General Assurance Company refused to pay either bill. The actions were consolidated for joint trial held on August 8, 2005.
At trial, General Assurance stipulated that plaintiffs submitted proper proof of claim sufficient to establish prima facie that the bills should have been paid. (See A.B. Med. Servs. PLLC v Lumbermens Mut. Cas. Co., 4 Misc 3d 86, 87 [App Term, 2d & 11th Jud Dists 2004].) Elaintiffs in turn stipulated that General Assurance had timely denied the claims on the ground that the respective assignors had not appeared for preclaim medical examination. (See Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18, 20-21 [App Term, 2d & 11th Jud Dists 2004].)
With these stipulations of proper proof of claim and timely denial, General Assurance “had to proffer evidence in admissible form establishing the failure of plaintiffs assignor to appear for the IMEs,” including evidence that the “requests for such IMEs were mailed to plaintiffs assignor.” (See Amaze Med. Supply Inc. v State Farm Mut. Auto. Ins. Co., 8 Misc 3d 139[A], 2005 NY Slip Op 51315[U], *1-2 [App Term, 2d & 11th Jud Dists 2005].) If General Assurance satisfied that burden, plaintiffs were required to “explain the [assignor’s] failure to attend the IME by offering a valid excuse for such nonappearance, or proof that, under the circumstances, the IME request was unreasonable and, thus, not authorized” by the regulations. (See Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d at 22.) Alternatively, plaintiffs were required to “independently establish [the] medical necessity [of the billed-for services] by admissible evidence.” (See id. at 23.)
These evidentiary burdens are gleaned from the growing body of appellate case law on motions for summary judgment, in the absence of virtually any case law that addresses these issues after trial. In this court’s view, when the insurer timely denies for *430 the assignor’s failure to attend a preclaim medical examination, the insurer bears the burden of persuasion on the assignor’s “failure to comply with a reasonable and proper preclaim IME request” (see id. at 22), and the assignee/provider bears the burden of persuasion on the medical necessity of the services (see Bedford Park Med. Practice P.C. v American Tr. Ins. Co., 8 Misc 3d 1025[A], 2005 NY Slip Op 51282[U], *3 [Civ Ct, Kings County 2005]).
General Assurance offered the testimony of two witnesses: Rhonda Steinback, one of its employees, and Jackie Winters, an employee of Metro Medical Services, a third-party contractor that arranges for medical examinations at General Assurance’s request. Through Ms. Winters, copies of six medical examination scheduling letters were admitted into evidence.
With respect to Foster Diagnostic, its assignor, Correna Gosine, was advised by letter dated March 25, 2002 that she had been scheduled for examination with a chiropractor, psychologist, physiatrist, and acupuncturist, and was advised by letters dated April 4 and April 5, 2002 that she had been rescheduled for examination by the same four professionals. With respect to Ocean Transportation, its assignor, Bryan Woodriffe, was advised by letter dated February 13, 2002 that he had been scheduled for examination by a chiropractor, physiatrist, and acupuncturist, and was advised by letter dated February 26, 2002 that he had been rescheduled for examination by the same three professionals.
None of these scheduling letters were signed by Ms. Winters, and she did not personally mail any of them. In her testimony, however, Ms. Winters “describ[ed] the standard office practice or procedures [Metro Medical] uses to ensure that such letters are properly addressed and mailed,” and, thus, “create[d] a presumption of mailing.” (See Amaze Med. Supply Inc. v State Farm Mut. Auto. Ins. Co., 8 Misc 3d 139[A], 2005 NY Slip Op 51315 [U], *2.)
In addition, through Ms. Winters, General Assurance introduced into evidence printouts from Metro Medical’s computer database, designated “patient notes,” for both assignors. The patient notes show for each entry a date and the identifying initials of the Metro Medical employee who made the entry. The patient notes for assignor Correna Gosine show that a Metro Medical employee left messages on Ms. Gosine’s voice mail advising of both the original and rescheduled appointments, and the patient notes for Mr. Woodriffe show that a Metro Medical *431 employee spoke to Mr. Woodriffe about the original appointments, and left a message with another person about the rescheduled appointments.
The evidence that neither Ms. Gosine nor Mr. Woodriffe appeared for any of the examinations is somewhat more tenuous. Ms. Winters testified that Metro Medical is advised by the professional by telephone or fax if the assignor does not appear for the scheduled appointment. There is no writing in this case advising that either assignor failed to appear for an appointment. Rather, the patient notes contain entries that the assignors failed to appear for any of the appointments, without showing in any case by what manner or from whom the information was obtained.
Courts have been willing to admit into evidence as a part of the “business records” of an enterprise writings or recorded oral information received from persons not employed by the enterprise, when those writings or information is received from someone who owes a “business duty” to the recipient to provide them accurately and when the recipient relies on the writing or information to properly conduct its business. (See People v Cratsley, 86 NY2d 81, 90-91 [1995]; People v DiSalvo, 284 AD2d 547, 548-549 [2d Dept 2001]; William Conover, Inc. v Waldorf, 251 AD2d 727, 728 [3d Dept 1998]; Pencom Sys. v Shapiro, 237 AD2d 144, 144 [1st Dept 1997]; Plymouth Rock Fuel Corp. v Leucadia, Inc., 117 AD2d 727, 728 [2d Dept 1986].)
Courts have refused “business records” treatment, however, when the identity of the person providing the information is unknown. (See People v Roberts, 304 AD2d 364 [1st Dept 2003]; Van Dina v City of New York, 292 AD2d 267, 267-268 [1st Dept 2002]; Dickson v Queens Long Is. Med. Group, 289 AD2d 193, 193 [2d Dept 2001]; Hamilton v City of New York, 262 AD2d 283, 283 [2d Dept 1999].)
Neither of General Assurance’s witnesses testified to the formal relationship between the insurer and Metro Medical, nor is it likely that either would have the personal knowledge to do so. The nature and purpose of the relationship, however, was clear from their testimony, sufficient for the court to conclude that Metro Medical owed a business duty to provide accurate information to General Assurance concerning the scheduling and attendance of medical^ examinations and that General Assurance relied on the information in the discharge of its legal duties with respect to the payment and denial of claims.
Similarly, although the names of the health care professionals, or their employees, who provided the information concern *432 ing the failure of the assignors to keep the appointments are not disclosed by the patient notes, given the nature and purpose of the scheduled medical examinations, and both Metro Medical’s and General Assurance’s reliance on the information concerning attendance, reliance which must be known to the professionals, the absence of a name does not prevent a finding of a “business duty” sufficient to support the admissibility of the information as it is reflected in Metro Medical’s computer records.
Admissibility and probative value are different things, of course, but the court finds that the evidence provided by General Assurance is sufficient to establish prima facie that the medical examinations were scheduled and rescheduled, and that neither Ms. Gosine nor Mr. Woodriffe appeared for any of them. In the absence of any evidence from Foster Diagnostic or Ocean Transportation that would suggest otherwise — and there was none — the court finds that neither Ms. Gosine nor Mr. Woodriffe appeared for any of the scheduled preclaim medical examinations. Moreover, since neither Foster Diagnostic nor Ocean Transportation offered any evidence of an explanation for the assignor’s nonattendance, or a demonstration that it was unreasonable for General Assurance to schedule the examinations, it was then up to plaintiffs to prove the medical necessity of the respective services.
Foster Diagnostic presented an MRI X ray referral form for Correna Gosine, signed by Dr. Melchias Munkendi, in which “C-Spine” and “L-Spine” are marked for MRI. Other sections of the form, however, which allow the referring physician to record “Clinical History & Reason for Study” and “Neurological/Orthopedic Positive Findings,” were left blank. There was no evidence of the status or expertise of Dr. Munkendi. Foster Diagnostic also presented a report of an MRI of Ms. Gosine’s cervical spine, signed by Dr. Melvin Leeds, a board certified radiologist. These documents are admissible as business records of Foster Diagnostic, including any medical opinion stated in the document. (See Bruce-Bishop v Jafar, 302 AD2d 345, 345 [2d Dept 2003]; Cohn v Haddad, 244 AD2d 519, 519 [2d Dept 1997]; Wilson v Bodian, 130 AD2d 221, 230-231 [2d Dept 1987].)
Without more, the fact of the referral itself is of little probative value in establishing medical necessity of the diagnostic test. Indeed, that is the clear import of Appellate Term’s conclusion that the assignor’s failure to attend a preclaim medical ex *433 amination “negates the presumption of medical necessity which otherwise attaches to [the provider’s] claim forms.” (See Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d at 22-23.)
The MRI report does reveal positive findings; specifically, “[posterior, non-focal disc bulge, C5-C6” and “[r] ever sal of the usual curvature in the sagittal plane indicative of muscle spasm.” While positive findings on diagnostic testing might otherwise support the medical necessity of performing the test in the first instance, here it is of little probative value since there is no medical opinion that connects those findings to the covered accident.
Ocean Transportation presented a letter signed by Dr. Polina Feygin, designated a “Letter of Medical Necessity Foe [sic] Medical Transportation” for Bryan Woodriffe. The letter is dated March 25, 2002, but most of the billed-for transportation services were rendered prior to that date. The letter reports that Mr. Woodriffe complained of “[l]ower back pain and stiffness”; “[difficulty in prolonged riding in auto”; and “[difficulty in rising to walk after sitting.” Dr. Feygin concludes:
“Based on the present complaints and symptoms the patient was recommended to use medical transportation to reduce muscle spasm, dynamic balance and pain in injured areas. It is my professional opinion that he needs to get comfortable position in the car, change it often and been helped [sic] to get up from sitting position and reduce risk of pain deterioration especially in the lower back area, so medical transportation is medical transportation is [sic] medically necessary for this patient.”
The opinion is purely conclusory, and is not supported by any clinical finding. There is no description of how the transportation services rendered would alleviate any diagnosed condition of Mr. Woodriffe, or why they would be medically superior to other forms of transportation. The letter adds little to the presumption of medical necessity that attached to the claim forms by reason of the referral (assuming that there was such a presumption for claims submitted by a transportation company), and that was negated when Mr. Woodriffe failed to appear for any of the scheduled examinations.
*434 Neither Foster Diagnostic nor Ocean Transportation carried its burden of proving that the services it rendered to its assignor were medically necessary.
Judgment is awarded to defendant in both action No. 1 and action No. 2, dismissing the complaint.