OPINION OF THE COURT
Memorandum.
Order insofar as appealed from modified by granting plaintiff A.B. Medical Services PLLC partial summary judgment in the sum of $6,765.47, plaintiff D.A.V Chiropractic EC. partial summary judgment in the sum of $593.94, and plaintiff Lvov Acupuncture EC. partial summary judgment in the sum of $1,690.56, and as to those sums, the matter is remanded to the court below for a calculation of statutory interest and an assessment of attorney’s fees, and for all further proceedings on said plaintiffs’ remaining claims; as so modified, affirmed without costs.
Appeal insofar as taken by plaintiff Square Synagogue Transportation Inc. unanimously dismissed.
Plaintiffs A.B. Medical Services PLLC, D.A.V Chiropractic PC. and Lvov Acupuncture EC. established their prima facie entitlement to summary judgment by proof that they submitted statutory claim forms, setting forth the fact and amount of the losses sustained, and that payment of no-fault benefits was overdue (see Insurance Law § 5106 [a]; Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742 [2004]; Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists 2003]). Upon such proof, the burden shifted to defendant to create a triable issue of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Absent tolling of the statutory time (Hospital for Joint Diseases v ELRAC, Inc., 11 AD3d 432, 434 [2004]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]), defendant’s conceded failure to deny the claims until December 2, 2002 violated the 30-day claim determination period and precluded it from interposing most defenses (aside from its claim that the incident was staged to defraud) as to all claims mailed on or before November 2, 2002.
As to the fraud defense, which survives the preclusion sanction (Matter of Metro Med. Diagnostics v Eagle Ins. Co., 293 *52 AD2d 751 [2002]), none of the proof offered to establish that the underlying incident was staged to defraud defendant was submitted in admissible form. None of the investigators’ reports or operators’ statements were sworn, defendant’s counsel alleged no basis to support an inference that any of the facts asserted in his statements were based on personal knowledge, and Tonya Miller, defendant’s claims representative, asserted in her affidavit merely the conclusory statement that “material misrepresentations [were] made in the presentation of the claim” and failed to adopt any of the factual assertions contained in the attached reports and statements. Thus, defendant failed to establish a triable issue of fraud (Ocean Diagnostic Imaging P.C. v Allstate Ins. Co., 6 Misc 3d 134[A], 2005 NY Slip Op 50189[U] [App Term, 9th & 10th Jud Dists 2005]; Ocean Diagnostic Imaging, P.C. v Lancer Ins. Co., 6 Misc 3d 62 [App Term, 2d & 11th Jud Dists 2004]; see e.g. Melbourne Med., P.C. v Utica Mut. Ins. Co., 4 Misc 3d 92 [App Term, 2d & 11th Jud Dists 2004] [attorney’s factual allegations, without personal knowledge of the investigation, mere unsubstantiated hearsay]; Dotzel v Allstate Ins. Co., 2003 NY Slip Op 50853[U] [App Term, 9th & 10th Jud Dists 2003]).
Similarly, defendant did not establish proper verification requests with respect to its letters which, inter alia, indicated that it intended to examine “claimants” under oath. An insurer
“may not rely on a letter, even if denominated a verification request, that merely informs a claimant that a decision on the claim is delayed pending an investigation, and without specifying a particular form of verification and the person or entity from whom the verification is sought, to toll the 30-day claim determination period” (Melbourne Med., P.C. v Utica Mut. Ins. Co., 4 Misc 3d at 94; see also A.B. Med. Servs. PLLC v Country-Wide Ins. Co., 6 Misc 3d 137[A], 2005 NY Slip Op 50255[U] [App Term, 2d & 11th Jud Dists 2005]; Ocean Diagnostic Imaging P.C. v Nationwide Mut. Ins. Co., 4 Misc 3d 142[A], 2004 NY Slip Op 51041[U] [App Term, 2d & 11th Jud Dists 2004]).
While the particular form of verification sought is stated, the persons sought to be examined are not identified, nor do the letters specify, inter alia, the time and place the examinations would take place (cf. 11 NYCRR 65-3.5 [d], [e]). As the instant letters do not conform to the requirements of a proper examination under oath verification request in substantial respects, the *53 letters are ineffective to toll the 30-day claim determination period.
Therefore, defendant must first demonstrate a tolling via proof that one or more of the notice of physical examination letters of October 2, 2002 and the follow-up letters of October 29, 2002 issued, that assignor failed to appear, and that the timing of said notice(s) and nonappearance(s) established a defense to any or all claims. As the December 2, 2002 denial was timely as to the final four post-November 2, 2002 claims, namely, plaintiff A.B. Medical Services PLLC’s claims for $323.36 and $71.40, plaintiff D.A.V Chiropractic P.C.’s claim for $168.50, and plaintiff Lvov Acupuncture PC.’s claim for $425 defendant need only establish that the denial as to said four claims was based on a meritorious defense (cf. Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 43, 44 [App Term, 2d & 11th Jud Dists 2004] [“A timely denial alone does not avoid preclusion where said denial is factually insufficient, conclusory, vague or otherwise involves a defense which has no merit as a matter of law . . .”]). It is initially noted that defendant’s claim denial form, which invoked only the eligible injured person’s failure to attend independent medical examinations (IMEs) on October 25, 2002 and November 8, 2002, is materially defective on its face. “A proper denial of claim must include the information called for in the prescribed denial of claim form” (Nyack Hosp. v Metropolitan Prop. & Cas. Ins. Co., 16 AD3d 564 [2005] [“(A) denial of a claim form issued by (an insurer) . . . even if timely, (is) fatally defective (if) it omit(s) numerous items of requested information and thus (is) incomplete”]; see also 11 NYCRR 65-3.4 [c] [11]; Nyack Hosp. v State Farm Mut. Auto. Ins. Co., 11 AD3d 664, 665 [2004] [the insurer’s “denial of claim, while timely, was nonetheless fatally defective in that it failed to include a number of basic items called for in the prescribed form,” citing Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 43, 44 (2004), supra]; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 226 AD2d 613, 614 [1996] [preclusion sanction imposed where the insurer “fail(ed) to establish that it issued to the (claimant) a properly completed Denial of Claim Form within the (prescribed) 30-day period”]). Here, an accurate determination as to the significance of the IMF demands for plaintiffs’ recovery of no-fault benefits depends on when defendant received each claim in the series, information which, in the first instance, is the insurer’s obligation to provide in a properly executed claim denial form. Moreover, as none of the six IMF letters scheduled an examination for October 25, 2002, this verification request is unproved.
*54 Nevertheless, in support of its motion, plaintiffs submitted a series of defendant’s IME request letters and a letter from counsel for plaintiffs assignor to defendant wherein he admits that assignor failed to appear for IMEs on October 16, 18, and 19, 2002 and on November 8, 15, and 22, 2002. While defendant submitted no proof of mailing of any of the IME notification letters, plaintiffs’ concessions establish receipt of the November 8, 2002 IME request and assignor’s nonappearance, the only proved basis for the claims’ denial asserted in the claim denial form. The issue is whether defendant exhausted the verification protocols with respect to said IME request, and for that matter, the remaining IME requests which, while not invoked as a basis for the claims’ denial, are established on the instant record.
The insurance regulations permit preclaim IMEs, but without consequence for the running of the 30-day claim determination period (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18 [App Term, 2d & 11th Jud Dists 2004]). All postclaim IME verification requests must be made within prescribed time frames, the initial request within 10 days of the claim’s filing (to be scheduled within 30 days of the claim’s receipt) and a “follow-up” request within 10 days of a subject’s nonappearance at the initially-scheduled IME (11 NYCRR 65-3.5 [a], [d]; 65-3.6 [b]; New York Hosp. Med. Ctr. of Queens v Country-Wide Ins. Co., 295 AD2d 583, 584-585 [2002]). “Any attempt by the insurer to deny the claim prior to exhausting the verification protocols is premature and of no effect” (King’s Med. Supply Inc. v Allstate Ins. Co., 7 Misc 3d 128[A], 2005 NY Slip Op 50451[U], *2 [App Term, 9th & 10th Jud Dists 2005]; see New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]; King’s Med. Supply Inc. v New York Cent. Mut. Fire Ins. Co., 5 Misc 3d 136[A], 2004 NY Slip Op 51550[U] [App Term, 2d & 11th Jud Dists 2004]). The request for the November 8, 2002 IME issued within 10 days only of plaintiff A.B. Medical Services PLLC’s claim for $71.06 and absent a follow-up IME request the claim determination period lapsed as to this claim. Further, said request predated receipt only of plaintiff A.B. Medical Services PLLC’s claims for $323.36 and $71.40, plaintiff Lvov Acupuncture PC.’s claim for $425, and plaintiff D.A.V Chiropractic PC.’s claim for $168.50, and as an unattended preclaim IME, as to those claims, summary judgment was properly denied (cf. Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18 [2004], supra). In any event, there was no follow-up IME request after the assignor *55 failed to appear on November 8, 2002, and the December 2, 2002 claim denial preserved no meritorious defense as to any claim filed prior to the November 8, 2002 IME demand (Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d at 44).
Plaintiff Square Synagogue Transportation Inc. concedes in appellants’ brief that it is not entitled to the relief sought upon the motion to the court below. Therefore, the appeal as taken by it is dismissed.
Accordingly, plaintiffs’ motion for summary judgment is granted as to plaintiff A.B. Medical Services PLLC’s claims for $182.37, $230.10, $604.24, $751.83, $218.35, $360, $1,972.08, $1,999.12, $376.32, and $71.06, plaintiff D.A.V Chiropractic, P.C.’s claim for $391.74 and $202.20, and plaintiff Lvov Acupuncture, RC.’s claims for $1,180.56 and $510, and as to those sums, the matter remanded to the court below for a calculation of statutory interest and an assessment of attorney’s fees pursuant to Insurance Law § 5106 (a) and the regulations promulgated thereunder, and for all further proceedings on said plaintiffs’ remaining claims.
Golia, J., concurs in part and dissents in part, and votes to dismiss the appeal insofar as taken by Square Synagogue Transportation Inc. and to modify the order, insofar as appealed from, by denying the motion of plaintiffs A.B. Medical Services PLLC, D.A.V Chiropractic PC. and Lvov Acupuncture PC. for summary judgment and, upon searching the record, granting defendant’s cross motion for summary judgment dismissing the complaint as to said plaintiffs in the following memorandum: I concur with the majority in their dismissal of the appeal by Square Synagogue Transportation Inc.
However, contrary to the holding of the majority, I find that the papers submitted by the defendant in opposition to the plaintiffs’ motion for summary judgment were sufficient to raise an issue of fact as to whether the defense of fraud was based upon a “founded belief that the alleged injuries] do[ ] not arise out of an insured incident” (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]), i.e., as to whether it was a “staged” accident.
For the reasons stated in my dissent in Ocean Diagnostic Imaging, P.C. v Lancer Ins. Co. (6 Misc 3d 62 [App Term, 2d & 11th Jud Dists 2004]), I find that the unsworn statements, when submitted in opposition to a motion for summary judgment and accompanied by an affidavit which makes reference to such reports, are sufficient for the purpose of raising a triable issue *56 of fact (see also Levbarg v City of New York, 282 AD2d 239, 241 [2001]). This court must, when deciding a motion for summary judgment, interpret the evidence in the light most favorable to the nonmovant (see Weiss v Garfield, 21 AD2d 156 [1964]). This is especially true where there is an allegation of fraud.
I further find that it is uncontroverted that the defendant insurer sent notices to the plaintiffs assignor to appear for independent medical examinations (IMEs) on October 16, 18 and 19, 2002 and, upon her failure to appear, gave her an additional opportunity to appear on November 8, 15 and 22, 2002. We know this is true because the plaintiff submitted a letter written by the assignor’s attorney dated January 21, 2003 acknowledging receipt of those notices as well as acknowledging the fact that assignor, Ms. Abbott, did not appear. The letter goes on to state that Ms. Abbott is a single mother and requests, through her attorney, to have all her IMEs held in one location and on the same date which must be a Saturday. In support of this demand, Ms. Abbott’s attorney admonished the insurance carrier that [t]he no-fault regulations clearly state that all medical examinations requested by the insurer shall be held at [a] time and place reasonably convenient to the applicant.”
It is interesting to note that one of the IMEs was scheduled for Saturday, October 19, 2002 and the assignor still failed to appear. It is even more interesting to note that her claimed medical treatments consisted of 12 separate dates including several visits in a single week and only one visit claimed fell on a Saturday, and that was for transportation unconnected to any claimed medical treatment.
It should be observed that the provision of the no-fault regulation addressed by the assignor’s attorney is 11 NYCRR 65-3.5 (e), which is part of the postclaim verification protocols.
As the majority of the appellate court stated in Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co. (7 Misc 3d 18, 20 [App Term, 2d & 11th Jud Dists 2004]):
“The insurance regulations provide, in the mandatory personal injury protection endorsement, which is independent of the verification protocols, that [t]he eligible injured person shall submit to medical examination . . . when, and as often as, the Company may reasonably require'' (11 NYCRR 65-12 [e], now 11 NYCRR 65-1.1 [d]) . . . and because this provision is included in the mandatory endorsement and not in the verification protocols, there appears *57 to be no reason to preclude an insurer” (emphasis added).
To be clear, I filed a dissenting opinion in Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co. (7 Misc 3d 18 [2004], supra) and do not agree with reading the no-fault regulations as a fragmented collection of rules and regulations. It is for this reason that I believe that both requirements should be read together. Therefore, all eligible injured persons must submit to medical examinations when and as often as the company may reasonably require, and the company shall hold such examinations at a place and time reasonably convenient to the eligible injured person.
In the matter at hand, I find that the “company” fully complied with the regulations. It was the plaintiffs assignor who clearly and intentionally chose not to submit to any independent medical examinations. The letter from the assignor’s attorney sent only after she failed to appear at any of the first noticed three IMEs (one of which was a Saturday) or any of the second noticed IMEs was merely a “red herring” meant solely to excuse her failures and not to comply with the regulations. Specifically, she had found the time on Wednesday, September 10, 2002, to attend a consultation ($230.10) with Dr. Schwartz and submit to SSEP testing ($604.24) with the same doctor, undergo physical therapy ($751.83) with Dr. Pegarum, and be treated ($391.74) by Dr. Konn, a chiropractor, all on the same day. Then on the following day, Thursday, September 11, 2002, she underwent substantial acupuncture treatment ($1,180.56) and analysis with Dr. Yuen. Indeed, she went for treatment on 11 separate days during the middle of the week.
Clearly, if it was reasonable for the assignor to attend all of her scheduled medical treatments during the work week, it was certainly not unreasonably inconvenient for her to attend the scheduled or rescheduled IMEs.
Accordingly, I would modify the order of the lower court insofar as appealed from and deny the plaintiffs’ motion for summary judgment and, upon searching the record, I would dismiss the complaint for the reasons set forth in my dissent in the case of Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co. (7 Misc 3d 18 [2004], supra).
Pesce, PJ., and Patterson, J., concur; Golia, J., concurs in part and dissents in part in a separate memorandum.