Golia, J.
(concurring in part and dissenting in part): I concur with the findings of my colleagues to the extent that they find defendant timely denied plaintiffs $67.38, $101.07 and $67.38 claims. I also agree that defendant’s proof as to mailing of the various notices was sufficient. However, I disagree with and dissent from their finding that defendant’s denial of the $357.94 claim, which it received on May 30, 2002 and denied on July 11, 2002, was untimely.
*98 An examination of the record in this case will reveal that this defendant did everything conceivable to meet and exceed the requirements and the spirit of the no-fault regulations.
Defendant, in accordance with the regulations, sent a notice for an independent medical examination (IME) to the eligible injured person on May 22, 2002 directing that he appear for IMEs on June 18, 2002 and June 24, 2002. This notice was sent prior to plaintiffs filing this claim, which is permissible pursuant to the regulations (see Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18 [App Term, 2d & 11th Jud Dists 2004]).
It is necessary to briefly examine the importance which the majority places on the fact that the initial notice for an IME was sent prior to the claim being filed. The majority in Fogel created, what I consider, a “forced” and unnecessarily complex interpretation of a very simple regulation. 11 NYCRR 65-1.1 states: “The eligible injured person shall submit to medical examination . . . when, and as often as, the Company may reasonably require” (emphasis added).
Nevertheless, Fogel created a bright-line distinction between an IME request that was sent before a claim was filed (preclaim) and one that was requested after the claim was filed (postclaim). Having invented this dichotomy, the Fogel majority held that if the assignor failed to appear at a preclaim IME, then such failure established, in itself, an issue of fact as to medical necessity. It further held that if the assignor failed to appeal’ at a postclaim IME and the defendant had followed the protocols set forth in the regulations, then summary judgment would be granted to the defendant.
In the Fogel case, I dissented and found that the regulations do not establish such a distinction. In fact it is interesting to note that the Appellate Term of the First Department in Inwood Hill Med., P.C. v General Assur. Co. (10 Misc 3d 18, 20 [2005]) acknowledged and cited the Fogel decision but found that “we decline to follow the majority’s holding and find more persuasive the conclusion reached by . . . [the] dissent.”
Notwithstanding my belief that there should not be any distinction between preclaim and postclaim requests for an IME, I nevertheless find here that defendant has properly and timely met the requirements of the regulations, even as defined by the majority in Fogel. As is tacitly addressed in the majority’s decision, defendant’s “delay letter” of June 5, 2002 should serve as *99 a postclaim verification request inasmuch as it contains all the elements required.
Plaintiffs assignor did not appear for those “first” scheduled dates. Defendant, at assignor’s request, rescheduled the IMEs for July 1 and July 2, 2002 and then sent letters reminding the assignor of the mutually agreeable dates of the second appointments for IMEs. The assignor, nevertheless, failed to appear on either July 1st or July 2nd and defendant thereupon sent a timely denial (NF-10). I note that the assignor contacted defendant immediately prior to the first scheduled IME and requested rescheduling. There was no such request for a rescheduling of the July appearances; the assignor simply failed to appear. It was only after the assignor failed to appear on July 1st and then failed to appear on July 2nd that he contacted the defendant on July 5th to discuss rescheduling.
Consequently, even if one were to discount the June 18th and June 24th IME appointments, it would be absurd to require defendant to serve a second set of notices for IMEs when the original dates were previously rescheduled at the assignor’s request and upon which he intentionally failed to appear and failed to notify the defendant that he would be unable to appear.
If one were to follow the reasoning of the majority, then defendant would have been well served to ignore the assignor’s request for rescheduling of the June dates. Thereafter, upon the assignor’s failure to appear, the defendant would then send a “follow-up” request setting a date of defendant’s choosing and thereby inconvenience the assignor, and upon the assignor’s failure to appear, defendant could then “legitimately” issue an NF-10 denial of claim.
In the matter before us, defendant sent its request for an IME on May 22, 2002. Plaintiff, on May 28, 2002, filed this disputed claim for $357.94. On June 11, 2002 and on June 14, 2002, both dates well within the 30-day claim period, defendant sent “reminder” letters to the eligible injured person (assignor) which noticed him for examinations on June 18, 2002 and June 24, 2002. On June 17, 2002 defendant received requests to adjourn both June IMEs and rescheduled them to the mutually agreed upon dates of July 1 and 2, 2002. (See affidavit of Jeffrey Mehl, Executive Director HVMC, exhibit H, U 5 of defendant’s cross motion.)
In addition, on June 5, 2002, defendant sent a “delay letter” to plaintiff (assignor) which stated specifically that the *100 claim was being delayed due to a pending demand for an IME of plaintiffs assignor. Certainly this postclaim “delay letter” must serve as a functional equivalent of an additional verification request pursuant to the regulations inasmuch as it specifically informed the plaintiff of what was required in order to complete the claim filed. In fact, the majority of the court then sitting in Ocean Diagnostic Imaging P.C. v Citiwide Auto Leasing Inc. (8 Misc 3d 138[A], 2005 NY Slip Op 51314[U] [App Term, 2d & 11th Jud Dists 2005]) held that a verification request will not serve to toll the 30-day period if it merely informs that the claim is delayed but fails to specify the particular information sought. Since this notice informs the plaintiff, with specificity, of the information sought, it is a functional equivalent and therefore qualifies as an additional verification request which in turn tolls the 3 0-day period. To me, that is substance over form.
I note that plaintiffs attorney’s affirmation states at page 5 that “there are no notices . . . calling for any verification or cooperation whatsoever.” He claims that the assignor has no obligation to open any mail from an unknown source and since the notice did not come from the insurance company, it has no significance. How counsel can speak for the assignor who is not his client and without an affidavit in support of his assertions is beyond me. Clearly it has no significance and should be discounted.
Despite defendant’s well demonstrated willingness to accommodate the assignor, that individual willfully failed to appear either on July 1 or July 2, 2002. Nor did he request an adjournment prior to July 1, 2002. The fact that he requested yet another opportunity to appear for these IMEs was clearly a red herring used to give the assignor additional time to build up his no-fault claim and cost the defendant additional funds for “no-show” medical appointments.
There must be an end. The assignor’s failure to appear at either of the two appointments that he scheduled certainly constitutes a reasonable end.
Here, defendant used every reasonable means to assure compliance with the regulations and to give proper notice to plaintiff and its assignor. Indeed, it was only after the assignor failed to appear on the adjourned dates, the second of which was requested by the assignor himself, that the defendant sent an NF-10 denial of claim.
Clearly, in light of those delay letters and reminder notes sent by the defendant, the NF-10 denial of claim form sent on July *101 11, 2002 was timely and I would affirm the order of the court below.
Pesce, P.J., and Rios, J., concur; Golia, J., concurs in part and dissents in part in a separate memorandum.