OPINION OF THE COURT
Katherine A. Levine, J.
*231 This case presents the novel issue of whether the notice requirements for verification requests, as contained in 11 NYCRR 65-3.5 and 65-3.6, apply to examinations under oath (EUO) that are noticed prior to the insurance company’s receipt of claim forms (preclaim EUO). As will be set forth below, this court decides this issue in the negative.
Plaintiff Prime Psychological, a medical services provider, brought this action seeking reimbursement in the amount of $1,341.14 for medical services it provided to assignor Andrea Ortiz stemming from her automobile accident. Defendant Nationwide Property and Casualty Ins. Co. seeks an order granting it summary judgment based upon Ortiz’s failure to appear for an EUO. Plaintiff opposes the motion and argues that defendant’s notice for an EUO was defective and accordingly failed to toll the statutory 30-day period in which defendant must deny the claim, hence rendering the denial untimely.
Plaintiff treated Ortiz in its medical facility on three occasions from November to December 2006, and on December 14, 2006 mailed Nationwide the consolidated bill, which the defendant received on December 18, 2006. Prior to its receipt of the bill, Nationwide scheduled Ortiz for two EUOs, pursuant to the provision in its insurance policy, both of which Ortiz failed to attend. Defendant submitted an affidavit from an investigator of the Special Investigation Unit (SIU) who had personal knowledge of the mailing practices and procedures surrounding EUO scheduling letters and stated that the EUO letters sent to Ortiz were made in the regular course of Nationwide’s business. The SIU investigator stated that he had personal knowledge that defendant mailed Ortiz three letters scheduling EUOs.* The first letter was sent to Ortiz via certified mail on November 30, 2006, advising that her presence was required on December 15, 2006. On December 14, 2006, a voice mail was received from Ortiz’s attorney stating that Ortiz would not be present at the EUO. The next day, the defendant’s investigator spoke with an individual from the office of Ortiz’s attorney and advised him that since his voice mail was received after hours, it would not be counted as an attempt to adjourn. Accordingly, Ortiz’s failure to attend the EUO was counted as a no-show. Nationwide sent another letter to Ortiz on December 15, 2006, scheduling her EUO for January 3, 2007. Ortiz’s attorney called the defendant’s of *232 fice on January 2 and requested an adjournment. Nationwide thus, by letter dated January 2, 2007, scheduled a final adjournment for January 11, 2007, which Ortiz failed to attend. Thus, only the last EUO was scheduled after Nationwide had received the bill.
On January 18, 2007, Nationwide denied the claim on the grounds that plaintiffs claim was not billed in accordance with the fee schedule and that Ortiz’s failure to attend an EUO constituted a breach of the insurance policy condition that the eligible injured person may reasonably be required to submit to EUOs, which precluded coverage. Nationwide retroactively terminated Ortiz’s coverage, effective October 16, 2006.
To grant a motion for summary judgment it must clearly appear that no material and triable issue of fact is presented. (Manhattan Med. Imaging, P.C. v State Farm Mut. Auto. Ins. Co., 20 Misc 3d 1144[A], 2008 NY Slip Op 51844[U] [2008].) In support of its motion for summary judgment, defendant is required to establish, prima facie, that (1) its insurance policy in effect when the EUOs were sought contained an endorsement authorizing such verification; (2) the EUO scheduling letters were timely mailed; (3) the date and place of EUO were not unreasonable; and (4) assignor failed to appear for the scheduled EUO. (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720, 721 [2d Dept 2006]; Eagle Surgical Supply, Inc. v Progressive Cas. Ins. Co., 21 Misc 3d 49 [2d Dept 2008].)
Here, plaintiff argues that defendant failed to satisfy the second prong of its prima facie case since it did not notify Ortiz’s attorney about the “follow-up EUO.” While the SIU investigator’s affidavit is silent about any mailings to the applicant’s attorney, the EUO notifications that were sent to Ortiz were cc:ed to her attorney. The issue thus presented is whether the language requiring that an applicant’s attorney be notified of a follow-up verification request applies to a preclaim EUO.
As a condition to coverage under the revised mandatory personal injury protection endorsement, “the eligible injured person . . . shall ... as may reasonably be required submit to examinations under oath by any person named by the [insurer] and subscribe the same” (11 NYCRR 65-1.1 [d] [Sec I, Conditions, Proof of Claim (b)]). Another condition to coverage under this section sets forth that an eligible person “shall submit to medical examination by physicians selected by, or acceptable to, the [insurer], when, and as often as, the [insurer] may reasonably require.” (11 NYCRR 65-1.1 [d] [Sec I, Conditions, Proof of Claim].)
*233 11 NYCRR 65-3.5 details the verification procedures to be followed after the insurer receives the completed application for no-fault benefits (NYS form N-F 2). The injured party or that party’s assignee medical services provider must then submit written proof of claim (claim form — usually verification of treatment by attending physician or other health care provider— NYS form N-F 3) to the insurer within 45 days after the date the medical services are rendered. Pursuant to Insurance Law § 5106 (a) and 11 NYCRR 65-3.5, an insurer is required to either pay or deny a claim for no-fault automobile insurance benefits within 30 days from the date an applicant supplies proof of claim or it will be precluded from offering any defenses at trial. (Mount Sinai Hosp. v Chubb Group of Ins. Cos., 43 AD3d 889-890 [2d Dept 2007]; see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 278 [1997].)
However, an insurer may toll the 30-day period by properly requesting verification within 15 days from the receipt of the proof of claim form or bill (Psych. & Massage Therapy Assoc., PLLC v Progressive Cas. Ins. Co., 5 Misc 3d 723, 724 [Civ Ct, Queens County 2004], citing 11 NYCRR former 65.15 [d] [1]). The insurance regulations provide for an independent medical examination (IME) (and EUOs) as part of an insurer’s “entitlement to ‘additional verification’ ” following receipt of a provider’s statutory claim forms. (Stephen Fogel Psychological, PC. v Progressive Cas. Ins. Co., 7 Misc 3d 18, 19 [App Term, 2d Dept 2004], affd in part 35 AD3d 720 [2006]; see 11 NYCRR 65-1.1 [d]; 65-3.5 [d]; see also All-Boro Med. Supplies, Inc. v Progressive Northeastern Ins. Co., 20 Misc 3d 554 [Civ Ct, Kings County 2008]; Lumbermens Mut. Cas. Co. v Inwood Hill Med., P.C., 8 Misc 3d 1014[A], 2005 NY Slip Op 51101[U] [Sup Ct, NY County 2005]; Inwood Hill Med. P.C. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [Civ Ct, NY County 2004].) Where an EUO or IME is requested as additional verification after receipt of the claim, the insurer must schedule the IME within the same time frame as medical examinations— within 30 days from the date of receipt of the prescribed verification form (11 NYCRR 65-3.5 [d]) — and must schedule an EUO within a reasonable time frame and as “expeditiously as possible.” (Eagle Surgical Supply, Inc. v Progressive Cas. Ins. Co., 21 Misc 3d 49, 51 [App Term, 2d Dept 2008].)
“[If the] requested verification[ ] has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within 10 calendar *234 days, follow up with the party from whom the verification was requested, either by telephone call ... or by mail. At the same time the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.” (11 NYCRR 65-3.6 [b] [emphasis added].)
“A claim need not be paid or denied until all demanded verification is provided” (New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2d Dept 2004]; see Insurance Law § 5106 [a]; 11 NYCRR 65-3.5 [c]; 65-3.8 [a] [1]).
In the instant matter, it is clear that the defendant made two requests in writing to the insured for an EUO prior to its receipt of the statutory claim form from plaintiff on December 18, 2006, and that it adjourned the EUO scheduled on December 15th until January 3rd at the request of the assignor’s attorney on January 2, 2007. Therefore both the initial and follow-up scheduling letters preceded defendant’s receipt of the claim.
In Stephen Fogel Psychological (7 Misc 3d 18 [2004]), the Appellate Term found that an insurer had the right to conduct an IME prior to its receipt of the statutory claim form or its statutory equivalent which, “under the regulations, triggers the verification process.” (Id. at 20.) The insurance regulations first mention the right of an insurer to request an IME (and EUO) in the mandatory personal injury protection endorsement, “which is independent of the verification protocols,” and, in light of the broad language authorizing IMEs, the court found there “to be no reason to preclude an insurer from requesting an IME prior to its receipt of the statutory claim form” (id. at 20). The reviewing court stated that such an interpretation furthers “the policies underlying no-fault insurance, including . . . the expeditious processing of claims” (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720, 722 [2006]).
The Appellate Term then found that the right to an IME “at this juncture is not afforded by the verification procedures and timetables” because 11 NYCRR 65-1.1 (d) “is not, on its face or contextually, a ‘verification’ provision, and because the detailed and narrowly construed verification protocols are not amenable to application at a stage prior to submission of the claim form.” (7 Misc 3d at 21.) In All-Boro Med. Supplies, Inc. v Progressive Northeastern Ins. Co. (20 Misc 3d 554 [Civ Ct, Kangs County *235 2008]), Judge Sweeney extended this reasoning to EUOs, finding that an insurance company acted within its rights under the endorsement by scheduling an EUO before it had received the claim.
In light of the above, and since defendant’s right to conduct an EUO of the assignor, at this juncture, is not afforded by the verification procedures and timetables, it is clear that the language governing the verification procedures and, hence, post-claim EUOs — that the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed (11 NYCRR 65-3.6 [b]) — is inapplicable to this preclaim EUO. As such, the fact that neither the SIU investigator nor the claims representative mentioned whether the EUO notices were sent to the assignor’s attorney is of no consequence.
Having determined that defendant properly requested an EUO before it received a claim, and that it was not required to send the EUO requests to the attorney, the court must decide whether an insurer’s timely denial of a claim, based upon an insured’s failure to appear for a preclaim EUO, which constitutes a breach of a condition precedent to payment, is a valid ground upon which to award summary judgment to the defendant.
In Stephen Fogel Psychological (35 AD3d 720 [2006]), the Second Department disagreed with the second portion of the Appellate Term decision which had distinguished the contractual remedies available to an insurer based upon whether the IME no-show was preclaim or postclaim. In the case of postclaim IME no-shows, the insurer could rely upon the remedy available upon nonreceipt of requested verification — the 30-day period in which to pay or deny a claim does not begin to run and any claim for payment by the provider is deemed to be premature. (7 Misc 3d at 20, citing New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2004]; see All-Boro v Progressive, 20 Misc 3d at 556-557.) However, this was inapplicable to preclaim IME no-shows, which must be governed by “general principles of no-fault” law; i.e., that a failure to attend a preclaim IME would defeat the presumption of medical necessity that inures to a medical provider’s properly submitted claim and hence would defeat a provider’s motion for a summary judgment (7 Misc 3d at 21-22).
The Second Department disagreed with this portion of the ruling, declaring that there was no distinction between the contractual remedies an insurance company could invoke *236 depending upon whether the failure to appear for an IME occurred before or after the submission of the claim form. Since the appearance of an insured at IMEs (and EUOs) was a condition precedent to the insurer’s liability on the policy, an insurer could retroactively deny a claim to the date of loss for a claimant’s failure to attend IMEs. (See also All-Boro v Progressive, 20 Misc 3d at 556 [where Judge Sweeney opined that a failure to appear for a preclaim EUO was a “valid ground for denying the claim ‘retroactively to the date of loss’ ”].) However, once an insurer received a claim, it was “required to adhere to the statutory and regulatory scheme for the processing of no-fault claims” and it therefore had to pay or deny the claim within 30 days of its receipt. (Id.)
Here, the defendant established the standard office practices and procedures used to ensure that the verification requests and the denial were properly addressed and mailed, and presented an affidavit from an SIU investigator who had personal knowledge of both the mailings and the EUO no-show. Defendant has established that it timely denied the claim and summary judgment is granted to defendant.

 Defendant also submitted an affidavit from a claims representative who personally denied the claims and had personal knowledge of the office’s business procedures concerning the mailing of denials.