*239 OPINION OF THE COURT
Fred J. Hirsh, J.
Facts
This action raises issues regarding the extent to which a no-fault insurance carrier may rely upon the results .of an independent medical examination (IME) to deny payment for medical treatment provided after the IME.
Plaintiff sues to recover first-party no-fault benefits for chiropractic care provided to Sandra Burrell during the period January 3, 2006 through January 30, 2007.
Burrell was injured in a motor vehicle accident that occurred on February 16, 2005. State Farm Insurance Company (State Farm) provided no-fault insurance benefits to Burrell for medical treatment received for injuries sustained in this accident.
Burrell received chiropractic treatment for the injuries she sustained in the accident from Richard E. Amato, D.C. (Dr. Amato). Burrell assigned her right to receive first-party no-fault benefits for her chiropractic care to Dr. Amato.
State Farm requested that Burrell submit to an IME to be conducted by Todd Aordkian, D.C. (Dr. Aordkian). The IME was conducted on September 8, 2005.
Dr. Aordkian’s examination found the range of motion of Burrell’s cervical and lumbar spine to be essentially normal. The only objective finding he made was decreased sensation along the right leg.
In addition to conducting an IME, Dr. Aordkian also reviewed medical records of the doctors who had provided treatment to Burrell prior to the IME and report of a cervical MRI dated April 30, 2005.
Dr. Aordkian’s diagnosis was a resolved cervical and lumbar sprain. Dr. Aordkian issued a report dated September 16, 2005 in which he concluded Burrell needed no further chiropractic treatment for the injuries arising from the February 16, 2005 automobile accident.
Dr. Aordkian testified at trial that Burrell’s condition would not improve even if she received additional chiropractic treatment.
Burrell received additional chiropractic treatment from Dr. Amato during the period January 3, 2006 through January 30, 2007.
Dr. Amato submitted the bills for this treatment to State Farm. State Farm denied payment of the bills for this treatment *240 because “New York No-Fault Chiropractic benefits were denied on 9/30/05 based upon the physical examination of Dr. Aordkian performed on 9/8/05.”
Dr. Aordkian testified he had not seen any medical reports or records relating the treatment Burrell received from Dr. Amato from January 3, 2006 through January 30, 2007. He did not know what Burrell’s condition was when she received this treatment or whether her condition had worsened after he conducted the IME.
The parties stipulated to the timely submission of the bills for the treatment and the timely issuance of denials. The parties stipulated into evidence the bills, the report of the independent medical examination performed by Dr. Aordkian and the medical reports and records reviewed by Dr. Aordkian when he conducted the IME.
Discussion
The no-fault regulations permit an insurer to demand the injured party submit to an IME “as often as[ ] the Company may reasonably require.” (11 NYCRR 65-1.1 [d].)
An applicant for no-fault benefits is not to be treated as an adversary. (11 NYCRR 65-3.2 [b].) The basic goal of an insurer in processing no-fault claims is “the prompt and fair payment to all automobile accident victims.” (11 NYCRR 65-3.2 [a].)
The purpose of an IME is to assist the carrier in determining the extent of the claimant’s injuries and the claimant’s need for continuing medical treatment. (See Rowe v Wahnow, 26 Misc 3d 8, 11-12 [App Term, 1st Dept 2009, McKeon, P.J., dissenting].)
The purpose of the no-fault statute is to insure prompt payment of medical claims regardless of fault. (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556 [2008]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312 [2007]; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997], rearg denied 90 NY2d 937 [1997].)
In order to meet this purpose, an insurer must pay or deny a claim within 30 days of receipt. (11 NYCRR 65-3.8 [a] [1].) An insurer may toll or extend its time to pay a claim by timely demanding an IME, an examination under oath or verification. (Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co., 44 AD3d 903 [2d Dept 2007]; 11 NYCRR 65-3.5 [c]; 65-3.8 [a] [1].)
A no-fault insurance carrier is precluded from asserting at trial any precludable defense not asserted in a timely denial. *241 (Fair Price Med. Supply Corp. v Travelers Indem. Co., 10 NY3d 556 [2008]; Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312 [2007]; Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997].)*
In this case, State Farm denied no-fault benefits for chiropractic care provided by Amato to Burrell between January 3, 2006 and January 30, 2007 based upon an IME cutoff based upon the IME performed by Dr. Aordkian on September 8, 2005.
However, like all other no-fault claims, timely submission of these claims by Amato created a presumption that the treatment was medically necessary. (All County Open MRI & Diagn. Radiology P.C. v Travelers Ins. Co., 11 Misc 3d 131[A], 2006 NY Slip Op 50318[U] [App Term 9th & 10th Jud Dists 2006]; Prime Psychological Servs., P.C. v Progressive Cas. Ins. Co., 24 Misc 3d 1244[A], 2009 NY Slip Op 51868[U] [Civ Ct, Richmond County 2009].) The burden shifted to the defendant to rebut the presumption of medical necessity. (A.B. Med. Servs. PLLC v Utica Mut. Ins. Co., 10 Misc 3d 50 [App Term 2d & 11th Jud Dists 2005]; AP Orthopedics & Rehabilitation, P.C. v Allstate Ins. Co., 27 Misc 3d 698 [Civ Ct, Richmond County 2010].)
The term “IME cutoff’ is a misnomer. The No-Fault Law and regulations do not permit a carrier to unilaterally deny a claimant future benefits based upon an IME. An “IME cutoff’ is nothing more than the opinion of the doctor that based upon the claimant’s complaints and the doctor’s objective findings at the time the IME is performed the claimant no longer needs medical care or treatment and/or diagnostic testing. The determination the claimant no longer needs treatment is generally based upon the examining doctor’s findings which result in the doctor concluding (1) the claimant has fully recovered from the injuries; (2) the claimant has made as full a recovery as is possible taking into account the nature and extent of the injuries, the claimant’s age, preexisting conditions or other factors; and/or (3) additional treatment or testing will not provide any medical benefit to the claimant. In this case, Dr. Aordkian *242 determined Burrell had made as full a recovery as possible and therefore needed no further chiropractic care.
Medical treatment is not necessary if it is inconsistent with generally accepted medical standards. (Delta Med. Supplies, Inc. v NY Cent. Mut. Ins. Co., 14 Misc 3d 1231[A], 2007 NY Slip Op 50241[U] [Civ Ct, Kings County 2007]; CityWide Social Work & Psychological Servs. v Travelers Indem. Co., 3 Misc 3d 608 [Civ Ct, Kings County 2004].) In order to make such a determination, the defendant must establish a factual basis and a medical rationale for finding the tests or treatment were not medically necessary. (Prime Psychological Servs., P.C. v Progressive Cas. Ins. Co., 24 Misc 3d 1244[A], 2009 NY Slip Op 51868[U] [Civ Ct, Richmond County 2009]; Nir v Allstate Ins. Co., 7 Misc 3d 544 [Civ Ct, Kings County 2005].)
An IME is a snapshot of the injured party’s medical condition as of the date of the IME. The opinion of the doctor conducting an IME and issuing a report that no further treatment or testing is needed is nothing more than an expert’s opinion that at the time the examination was conducted the claimant did not need any further treatment or testing. As regards the need for future treatment, the IME is nothing more than an expert’s prediction that the claimant has fully recovered or received the maximum therapeutic benefit from the treatment and does not presently need any additional treatment.
However, there is no legal reason why claims for medical treatment submitted after an “IME cutoff’ has been issued should be treated any differently than claims submitted prior to the IME. Therefore, a timely submitted claim for medical services rendered after the issuance of an IME cutoff is presumed to be medically necessary. The timely submission of a post-IME cutoff claim shifts the burden to the defendant to establish a factual basis and medical rationale for its determination that the treatment was unnecessary.
Dr. Aordkian testified that he did not review any reports or records relating to the treatment Burrell received after the IME. He was unaware of the reasons Burrell sought and obtained the treatment. He was unaware of the treatment provided. Therefore, the defendant failed to prove either a factual basis or a medical rationale for its determination that the chiropractic treatment was unnecessary.
The defendant could have obtained the necessary information through verification and could have had Dr. Aordkian or any other qualified expert review the material and render an opinion *243 regarding the medical necessity of the treatment rendered. State Farm did not do this.
For the foregoing reasons, the court finds for the plaintiff.
The clerk is ordered to enter judgment in favor of the plaintiff and against the defendant in the sum of $1,920.90 together with interest and legal fees in accordance with the No-Fault Law and regulations and costs and disbursements as taxed by the clerk.

 Four defenses are not subject to the preclusion rule: (1) fraudulent incorporation (State Farm Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313 [2005]); (2) lack of coverage (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]); (3) staged accident (Central Gen. Hosp. v Chubb Group of Ins. Cos., supra; Matter of Allstate Ins. Co. v Massre, 14 AD3d 610 [2d Dept 2005]; V.S. Med. Servs., P.C. v Allstate Ins. Co., 11 Misc 3d 334 [Civ Ct, Kings County 2006]); and (4) exhaustion of coverage (Hospital for Joint Diseases v Hertz Corp., 22 AD3d 724 [2d Dept 2005]); Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533 [2d Dept 2004]).