OPINION OF THE COURT
Diane A. Lebedeff, J.
Currently, torrents of no-fault litigation deluge New York courts and no-fault requests for accelerated judgment swell our motion calendars.[1] Adding to the turmoil is that no-fault summary judgment motions pose undeniable difficulties, in large part, because traditional summary judgment formulations give poor guidance for their ready resolution.
Building a more workable approach to no-fault summary judgment motions requires recognition that the bulk of no-fault summary judgment issues are decided on the sufficiency of the papers and arguments of law regarding specific no-fault technicalities, as well as explicit identification of no-fault variations of traditional summary judgment precepts.[2] Using that foundation, construction of a series of relevant inquiries pro *998 duces the following four-step analysis for no-fault summary judgment motions: (1) a threshold review of the three requisite showings of a no-fault plaintiffs prima facie case; (2) an assessment of the insurer’s tendered proof of issuance and service of its response, if any; (3) a regulatory compliance review of any properly served insurer response, weighing a response’s timeliness, form and substance; and (4), finally, a search for triable issues of fact in relation to any properly preserved, otherwise precludable defenses, as well as of defenses independent of the response process. This decision concentrates on these four areas of inquiry, with amplification and qualifications footnoted.
This same analysis is adaptable to identification of trial issues in no-fault cases and — by starting with the second step — to insurers’ motions and cross motions for summary judgment. In relation to the case before the court, the plaintiffs motion and insurer’s cross motion for summary judgment are subjected to the above pattern of analysis and, near the end of this decision, special consideration is given to the fee schedule dispute posed.
Step 1: Plaintiffs Prima Facie Threshold Review
As a matter of law, a no-fault plaintiffs summary judgment showing is extremely limited and is free of the normal summary judgment obligation to rebut defenses.* *[3] A no-fault plaintiff’s *999 necessary prima facie sho ving consists of only three scant elements.
First, the claimant must present in its original motion papers the claim and assignment forms it submitted to the insurer (see, A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 7 Misc 3d 127[A], 2005 NY Slip Op 50432[U] [App Term, 2d & 11th Jud Dists 2005] [as to claim form]; see, Inwood Hill Med. P.C. v Allstate Ins. Co., supra, 2004 NY Slip Op 50565[U], *7; T&G Med. Supplies, Inc. v State Farm Mut. Auto. Ins. Co., 7 Misc 3d 1017[A], 2005 NY Slip Op 50636[U] [Civ Ct, NY County 2005]). Second, necessary to a proper evidentiary foundation for the forms and related documents, a supporting affidavit must establish the tendered records are part of plaintiffs business records (see CPLR 4518 [a]; North Acupuncture, P.C. v State Farm Ins. Co., 14 Misc 3d 130[A], 2006 NY Slip Op 52523[U], *2 [App Term, 2d & 11th Jud Dists 2006]).* **[4] 5Third, the no-fault plaintiff must prove that the claim and assignment forms were served upon the insurer.[5]
*1000 The adequacy of plaintiffs motion is tested by inspecting the plaintiffs affidavits and exhibits for sufficiency. If these three elements are made out and stand unrefuted, a no-fault plaintiff is entitled to a determination that it has made out its prima facie case.* ****[6]
Step 2: Assessment of Proof of Issuance and Service of Insurer’s Denial or Unsatisfied Request
Because no-fault plaintiffs’ summary judgment motion papers need not counter pleaded denials and affirmative defenses, insurers bear the entire burden of establishing the existence of cognizable defenses (see generally, Mitchell S. Lustig and Jill Lakin Schatz, Outside Counsel, Summary Judgment Motions: Defending No-Fault Insurer, NYLJ, Oct. 26, 2005, at 4, col 4). This second analytic stage reviews the insurer’s opposition papers to determine whether the insurer makes a threshold showing that it preserved a precludable defense or that unsatisfied verification requests exist.
*1001 Just as a plaintiff must do, and by reason of similar case law standards, the insurer must advance copies of all relevant communications, prove the service of each, and establish a business record foundation (see, Mitchell S. Lustig and Jill Lakin Schatz, Outside Counsel, Proper Proof of Mailing Under NY No-Fault Law, NYLJ, Oct. 2, 2006, at 4, col 4 [as to insurer’s proof of mailing]). If the insurer claims an unsatisfied request is outstanding, the insurer must submit a copy of the original request and a follow-up request, establish issuance and service of the requests, and supply evidence of the failure to respond or cooperate (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 35 AD3d 720, 721 [2006]; Psychological Practice, P.C. v State Farm Fire & Cas. Co., 16 Misc 3d 12, 13 [App Term, 2d Dept 2007] [general statement of affiant’s “personal knowledge” not sufficient factual support to establish failure to appear for examination]).[7] However, if the insurer issued a denial while a verification request was outstanding, the request is deemed waived and is disregarded (King’s Med. Supply Inc. v Kemper Auto & Home Ins. Co., 7 Misc 3d 128[A], 2005 NY Slip Op 50450[U], *2 [App Term, 2d & 11th Jud Dists 2005]).
Step 3: Regulatory Compliance Review of Timeliness and Form of No-Fault Insurer’s Denial or Verification Requests
If the defendant does establish that it issued and served a denial or verification requests, each communication must be examined to determine if it serves as a proper defense by conforming in timing, form and substance with the requirements of the “Rube-Goldberg-like maze” of the No-Fault Law and the “thicket” of governing Insurance Department regulations (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., supra, 90 NY2d at 286, 280).[8]
*1002 In relation to timeliness, the insurer must provide proof of “when the . . . [denial or] request. . . was mailed” (I & B Surgical Supply v New York Cent. Mut. Fire Ins. Co., 16 Misc 3d 4, 6 [App Term, 2d & 11th Jud Dists 2007]), and show mailing within the appropriate time period (see n 2). Typically, an insurer’s affidavit refers to the date of printing of the form and describes a procedure which assured a properly addressed envelope containing the form was mailed on that day or the next business day.
As to form and substance of a denial, a “proper denial of claim must include the information called for in the prescribed denial of claim form . . . and must ‘promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated’ ” and cannot be amended after the applicable time period has passed (Nyack Hosp. v State Farm Mut. Auto. Ins. Co., 11 AD3d 664, 664 [2d Dept 2004], quoting General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979]). A denial is deficient if it is “factually insufficient, conclusory, vague or otherwise involves a defense which has no merit as a matter of law” (id. at 665, quoting Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 43, 44 [App Term, 2d Dept 2004]).[9]
In relation to the form of a verification request, it must “request. . . information . . . relative to . . . [the] claim” from the claimant or identify to the claimant the persons or entities asked to provide the information (Mount Sinai Hosp. v Triboro *1003 Coach, 263 AD2d 11, 17 [2d Dept 1999]; Nyack Hosp. v Encompass Ins. Co., 23 AD3d 535 [2d Dept 2005] [“delay” letter explaining investigation underway not a verification request]). Belated litigation objections that such requests are unclear are generally rejected (Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 262 AD2d 553, 555 [2d Dept 1999] [“Any confusion . . . as to what was being sought should have been addressed by further communication, not inaction”]; Metroscan Med. Diagnostics, P.C. v Progressive Cas. Ins. Co., 15 Misc 3d 126[A], 2007 NY Slip Op 50500[U], *2 [App Term, 9th & 10th Jud Dists] [fact of response showed request sufficiently clear]).
On these issues, the court reaches a straightforward determination of law unless some cognizable question of ambiguity is raised by a litigant (compare Foley Prods. v Singer Corp., 133 AD2d 531 [4th Dept 1987] [where no ambiguity in document, no deferral for factual exploration]). Dismissal on the ground of prematurity follows if proper unsatisfied outstanding verification requests are established. Where a proper and timely denial is found, the court proceeds to the next analytic step.
Step 4: Summary Judgment Evaluation of Properly Cognizable
Defjnses
Only at this final stage are typical summary judgment principles applied to those defenses found preserved and unprecluded, as well as to any independent defenses, with recognition that the defendant bears the burden on such defenses for reasons set forth above.[10] Some defenses can be resolved as a matter of law and others on the basis of evidentiary standards appropriate to the nature of the case. In ruling on such motions, when appropriate, courts should preserve judicial resources and not shy away from granting partial relief as to *1004 predicate elements where the record does not support a full determination (CPLR 3212 [e], [g]).
The point upon which opposition papers frequently stumble is the failure to present evidentiary material in admissible form (New York & Presbyt. Hosp. v Allstate Ins. Co., 31 AD3d 512, 513 [2d Dept 2006]; CPLR 3212 [b]).[11] However, because summary judgment may be defeated when the opponent raises a “significant doubt” regarding the existence of “a material, triable issue of fact,” an insurer may avail itself of the alternative of an opposition affidavit which “set[s] forth names of witnesses, the substance of their testimony, how it was known what their testimony would be, and how the witnesses acquired their knowledge” (Phillips v Kantor & Co., 31 NY2d 307, 311-312 [1972]).[12]
With respect to fee schedule disputes, special treatment is appropriate once, as here, the insurer establishes a timely denial *1005 objecting that a charge was not a permissible scheduled fee.[13] Where a fee for medical services or goods does not have a fixed value in the applicable fee schedule and no comparable charge is shown, it is typically found that the fee schedule dispute raises a triable issue (see, for example, A.B. Med. Servs., PLLC v American Tr. Ins. Co., 15 Misc 3d 132[A], 2007 NY Slip Op 50680[U] [App Term, 2d & 11th Jud Dists 2007]).
Conclusion and Application
In the captioned matter, plaintiff moves, and the insurer cross-moves, for summary judgment. The plaintiff has made out a prima facie case, with the insurer admitting receipt of the two subject claims (step 1); denials are shown to have been issued and served (step 2); the denials are proper in timeliness, form and substance, and preserved fee schedule objection (step 3); and the fee schedule disputes pose triable issues of fact (step 4).
As to the cross motion, the insurer does not establish a proper scheduled fee for the goods at issue and does not show a properly comparable fee. Although the insurer does establish that a verification request was unanswered, it presents no argument of law as to why such request should not be held waived by reason of the denial nor urge that the motion is premature because of outstanding discovery related to matters within the exclusive *1006 knowledge of the movant (CPLR 3212 [f]; 3101; Lexington Acupuncture, P.C. v State Farm Ins. Co., 12 Misc 3d 90 [App Term, 2d & 11th Jud Dists 2006]).
Based on the foregoing, the motion and cross motion are granted to the extent that it is determined that plaintiff has established its prima facie case and that triable issues of fact exist as to proper scheduled fees, and they are otherwise denied.

. “No-fault” litigation is brought by medical establishments pursuing insurers for payment of assigned economic loss claims of motor vehicle accident victims. Starting in 2002, a majority of no-fault claimants began to choose litigation over arbitration (Robert A. Stern, Take the Money and Run: The Fraud Crisis in New York’s No-Fault System, 75 NY St BJ 35, 35 [Oct. 2003] [“(b)etween 1999 and 2002, arbitrations and court actions reversed places in the volume of cases filed”]), and they continue to do so in increasing numbers. Statistics portray the consequences. In calendar year 2006 alone, the New York City Civil Court had approximately 100,000 new no-fault case filings, of which roughly 70,000 were filed in Queens County Civil Court. In Queens County Civil Court, on a typical 2007 court day, a trial judge may be assigned two to seven no-fault triads and, on the summary judgment no-fault motion calendar, 100 or so motions may appear; considering a larger time frame of the last six months of 2006 in that same court and all types of no-fault motions, a total of almost 11,000 no-fault motions were resolved on the no-fault motion calendars, with more than 3,000 cases marked disposed, primarily by and before this judge.

. The technical issues involve the no-fault system’s “tightly timed process of claim, disputation and payment” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 281 [1997]; Insurance Law § 5101 et seq.; 11 NYCRR 65-1.1 et seq.; see <http://www.ins.state.ny.us/r68_link.htm>, last updated Feb. 2, 2007, for Insurance Department Web site links to the No-Fault Law, regulations, forms, opinion letters and frequently asked questions).
*998 The process of claim submission and insurer response, and the computation of time periods, are well summarized elsewhere (see Inwood Hill Med. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U], *4-7 [Civ Ct, NY County 2004, Hagler, J.]; see also Metroscan Imaging v American Tr. Ins. Co., NYLJ, Dec. 10, 1999, at 27, col 5 [Civ Ct, NY County 1999, Karen Smith, J.] [addressing “old” regulations in effect prior to Apr. 5, 2002]). Briefly put, once a claim is submitted (11 NYCRR 65-3.11 [b]), payment is subject to the “30 day rule” (11 NYCRR 65-3.8 [a] [1]), with a default of timely payment entitling a claimant to sue for payment of an overdue claim (Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742, 742-743 [2d Dept 2004]). While a failure to issue a timely denial precludes an insurer from subsequent objection to the sufficiency or propriety of the claim form submitted (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., supra, 90 NY2d at 278), a timely denial preserves the stated objections for litigation. Unsatisfied insurer requests support dismissal of claims.

. A no-fault plaintiffs substantive proof of its claim is the claim form (Insurance Law § 5106 [a] [claim form gives “proof of the fact and amount of loss sustained”]; 11 NYCRR 65-1.1 [d] [Sec I, Conditions, Proof of Claim] [claim form proves “particulars of the nature and extent of the injuries and (health benefits) received and contemplated”]; Dermatossian v New York City Tr. Auth., 67 NY2d 219, 224 [1986] [“to receive payment (a claimant) need only file a ‘proof of claim’ (which) the insurers are obliged to honor”]). The exemption from the normal summary judgment motion requirement that a movant *999 “show that there is no defense to the cause of action” (CPLR 3212 [b]) arises because courts have perceived that the “clear legislative mandate to facilitate the prompt and efficient resolution of first-party no-fault claims” requires that a litigating no-fault claimant be subjected to “[no] greater burden of proof after the action is commenced than was necessary at the claim stage” (Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U], *3 [App Term, 2d & 11th Jud Dists 2003]; see Global Med. Equip., Inc. v Allstate Ins. Co., 15 Misc 3d 131[A], 2007 NY Slip Op 50675[U], *1 [App Term, 2d & 11th Jud Dists 2007] [plaintiff need not show denial untimely]).

. Such an affidavit must show the affiant “possessed sufficient personal knowledge of plaintiffs office practices and procedures so as to lay a foundation for the admission of the . . . documents as business records” (Dan Med., P.C. v New York Cent. Mut. Fire Ins. Co., 14 Misc 3d 44, 46 [App Term, 2d & 11th Jud Dists 2006] [affiant’s unelaborated description as “corporate officer” insufficient]; Vista Surgical Supplies, Inc. v Allstate Ins. Co., 15 Misc 3d 126[A], 2007 NY Slip Op 50502[U] [App Term, 9th & 10th Jud Dists 2007] [conclusory statement that documents were business records insufficient]; Pine Hollow Med., P.C. v Progressive Cas. Ins. Co., 13 Misc 3d 131[A], 2006 NY Slip Op 51870[U] [App Term, 2d & 11th Jud Dists 2006] [proper proffer by affidavit of employee of billing company]).

. Service of both the no-fault claim and assignment forms is established by an actual affidavit of mailing or by proof of “an office practice and procedure followed ... in the regular course of . . . business . . . geared so as to ensure the likelihood that [the item] is always properly addressed and mailed” (Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830 [1978]). A post office receipt may supply additional “direct proof of actual mailing” (LMK Psychological Servs., P.C. v Liberty Mut. Ins. Co., 30 AD3d 727, 728 [3d Dept 2006]) provided evidence relates the receipt to an identified mailing (New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d 547, 548 [2d Dept 2006]). A conclusory affidavit of service is insufficient (AB. Med. Servs. PLLC v Specialty Natl. Ins. *1000 Co., 11 Misc 3d 144[A], 2006 NY Slip Op 50810[U], *2 [App Term, 2d & 11th Jud Dists 2006] [finding deficient statement affiant “issued,” “billed out,” and “sent” claims]). A proper showing of mailing gives rise to a presumption of receipt and an insurer asserting it did not receive a claim bears a heavy burden to overcome that presumption (see, for example, Maldonado v Steiner, 10 Misc 3d 128[A], 2005 NY Slip Op 51905[U] [App Term, 2d & 11th Jud Dists 2005]).
A plaintiff may tender an insurer’s denial of claim form as an acknowledgment of receipt as its business record (see Medical Expertise v Trumbull Ins. Co., 196 Misc 2d 389, 390-394 [Civ Ct, Queens County 2003, Siegal, J.]; but see Midborough Acupuncture, P.C. v New York Cent. Mut. Fire Ins. Co., 13 Misc 3d 132[A], 2006 NY Slip Op 51879[U], *2 [App Term, 2d & 11th Jud Dists 2006] [such tender establishes no other element of plaintiffs prima facie case]).

. Rarely, an estoppel or a triable issue of fact arises from an actual or possible error in a claim or assignment form (see Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U], *4 [App Term, 2d & 11th Jud Dists 2003] [estoppel as to items not prescribed]; Amaze Med. Supply v Eagle Ins. Co., 3 Misc 3d 130[A], 2004 NY Slip Op 50389[U] [App Term, 2d & 11th Jud Dists 2003] [same, items not delivered to assignor]; see generally, Resnick v Levine, 80 AD2d 699 [3d Dept 1981] [as to errors in business ledgers]; see, Damadian MRI in Garden City, P.C. v Windsor Group Ins., 2 Misc 3d 138[A], 2004 NY Slip Op 50266[U], *2 [App Term, 2d & 11th Jud Dists 2004] [“whether plaintiff is the same entity as the one named in the assignment” can be question of fact] [as to assignment]). Dismissal is warranted where the claim form discloses services were performed by an independent contractor, rather than by claimant (see Rockaway Blvd. Med. P.C. v Progressive Ins., 9 Misc 3d 52, 54 [App Term, 2d Dept 2005]).

. These requirements apply to verification requests, as well as requests for appearance at an examination under oath and independent medical examination. A failure to appear for a “preclaim” examination may be viewed as a lack of cooperation which defeats coverage (see Inwood Hill Med., P.C. v General Assur. Co., 10 Misc 3d 18 [App Term, 1st Dept 2005]), but a plaintiff may render the question a triable issue of fact by offering “a valid excuse for . . . [the] nonappearance [or demonstrate] that the . . . requests were unreasonable under the circumstances” (Amaze Med. Supply Inc. v General Assur. Co., 12 Misc 3d 127[A], 2006 NY Slip Op 50910[U], *1-2 [App Term, 2d & 11th Jud Dists 2006]).

. This review follows the pattern of CPLR 3212 (g) in that the court — “by examining the papers” and “interrogating counsel” — reaches a determination *1002 of operative legal facts “deemed established for all purposes in the action” which are “not in dispute or are incontrovertible,” often winnowed during oral argument. This process permits the trial court to comply with the mandatory obligation to take judicial notice of state agency regulations (CPLR 4511 [a]) and be alerted to new appellate decisions not covered in papers prepared over as long as a nine-month period (see Socrates Psychological Seros., P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 642, 645 n 1 [Civ Ct, Queens County 2005]).

. Typical denials assert a defective assignment of benefits, belated filing of the claim, a lack of medical necessity (whether for the treatment or inflation in the quantum or cost of treatment), and that a charge exceeds permitted fee schedules. In many instances, a clear statement of the objection is sufficient, and even medical necessity denials need not set out a medical rationale (A.B. Med. Seros., PLLC v GEICO Cas. Ins. Co., 39 AD3d 778 [2d Dept 2007], revg 12 Misc 3d 30 [App Term, 2d & 11th Jud Dists 2006]; A.B. Med. Servs., PLLC v Liberty Mut. Ins. Co., 39 AD3d 779 [2d Dept 2007]; New York Univ. Hosp. Rusk Inst. v Government Empls. Ins. Co., 39 AD3d 832 [2d Dept 2007]). A rejection for untimely filing must “advise claimants of their right to justify late submissions” or be “deemed ineffective” (Radiology Today, P.C. v Citiwide Auto Leasing Inc., 15 Misc 3d 92, 94 [App Term, 2d & 11th Jud Dists 2007]).

. There are roughly three classes of additional independent defenses. First, some center upon arguments “that the alleged injury does not arise out of an insured incident,” often by asserting a “staged accident” or an independent basis for the injury (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]; see also 11 NYCRR 65-3.8 [e]; A.B. Med. Servs. PLLC v Commercial Mut. Ins. Co., 12 Misc 3d 8, 11 [App Term, 2d & 11th Jud Dists 2006] [assignee health care provider not an “innocent” third party and may be subject to retroactive cancellation of fraudulently procured policy]). Second, some urge a lack of eligibility to receive no-fault payments under no-fault or other rules applicable to the medical provider, the patient, or the insured (see, for example, State Farm Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313, 320 [2005] [improper professional corporation]). Third, albeit less commonly seen, traditional defenses exist, such as statutes of limitations, exhaustion of policy benefits, and the like.

. Formal or substantive requirements apply to certain affidavits (Support Billing & Mgt. Co. v Allstate Ins. Co., 15 Misc 3d 126[A], 2007 NY Slip Op 50496[U], *1 [App Term, 2d & 11th Jud Dists 2007] [doctor must affix stamped facsimile signature (citing CPLR 2106)]; Bath Med. Supply, Inc. v Allstate Indent. Co., 13 Misc 3d 142[A], 2006 NY Slip Op 52273[U] [App Term, 2d & 11th Jud Dists 2006] [out-of-state affidavit needs certificate of conformity to comply with CPLR 2309 (c)]; see All County Open MRI & Diagnostic Radiology P.C. v Travelers Ins. Co., 11 Misc 3d 131 [A], 2006 NY Slip Op 50318[U], *2 [App Term, 9th & 10th Jud Dists 2006] [“peer review . . . eonclud(ing) that there was no medical necessity due to ‘the lack of sufficient information’ upon which the reviewer could make such determination” deficient, absent proof of verification request for such information]). Exhibits should also be in admissible form or their proffer limited to admissible portions (see, as to police reports, Johnson v Lutz, 253 NY 124 [1930]; 58 NY Jur 2d, Evidence and Witnesses § 480 [police reports, generally]; § 503 [police report as to cause of accident or injury]). And, even though “admissions by a party of any fact material to the issue are always competent evidence against [that party], wherever, whenever or to whomsoever made” (Reed v McCord, 160 NY 330, 341 [1899]), some formal requirements may be applicable to assure accuracy (see R.M. Newell Co. v Rice, 236 AD2d 843, 844 [4th Dept 1997], lv denied 90 NY2d 807 [1997] [proffer of reporter-certified unsigned deposition transcript]).

. Such showing is distinguished from a simple offer of proof because its proponent should “demonstrate acceptable excuse for [its] failure to meet the requirement of tender in admissible form” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; see, Ratut v Singh, 186 Misc 2d 350, 351 [Civ Ct, Kings County 2000], and Vincent C. Alexander, New York Practice, Opposing Summary Judgment With Hearsay, NYLJ, Mar. 15, 2004, at 3, col 1 [discussing cases]; see Ocean Diagnostic Imaging, P.C. v Lancer Ins. Co., 6 Misc 3d 62, 65 [App Term, 2d & 11th Jud Dists 2004, Golia, J., dissenting]). This type of opposition is likely to be tendered when a defense is “that the alleged injury does not arise out of an insured incident” (Central Gen. Hosp. v Chubb Group of Ins. Cos., supra, 90 NY2d at 199), or an insurer urges “badges of fraud” are *1005 present (see Tahir v Progressive Cos. Ins. Co., 12 Misc 3d 657, 664 [Civ Ct, NY County 2006, Lebedeff, J.] [collecting cases in dicta]).

. A medical provider must limit its charges to those permitted by approved fee schedules (Insurance Law § 5108 [a]; 11 NYCRR 68.0 [f]), which protects a patient from erosion of available benefits by inflated charges (Ops Gen Counsel NY Ins Dept No. 04-06-11 [June 16, 2004]; see AIU Ins. Co. v Olmecs Med. Supply, Inc., 2005 WL 3710370, *1-4, 2005 US Dist LEXIS 29666, *4-13 [ED NY 2005] [scheme to highly inflate durable medical goods claims]). Fees for services and procedures Eire governed by the workers’ compensation fee schedule (11 NYCRR 68.1), and durable medical goods fees are governed by the New York Medicaid fee schedule (11 NYCRR part 68, Appendix 17C, part F [a]; <http://www.emedny.org/ProviderManuEds/DME/index.html>, last updated May 1, 2007). An attorney’s affirmation can request judicial notice of a scheduled fee and submit the page of the fee schedule applicable to the fee on the date of service or sale.
If an insurer demonstrates it was correct in its reading of the fee schedules or its identification of comparable procedures, it is entitled to judgment (Forrest Chen Acupuncture Servs., P.C. v GEICO Ins. Co., 15 Misc 3d 137[A], 2007 NY Slip Op 50874[U] [App Term, 2d & 11th Jud Dists 2007]; Great Wall Acupuncture v GEICO Gen. Ins. Co., 16 Misc 3d 23 [App Term, 2d & 11th Jud Dists 2007] [acupuncturist’s fee properly set as equivalent to chiropractor performing acupuncture]), unless the claimant shows “an unusual procedure or unique circumstance justifies the necessity” for a charge above the scheduled fee (11 NYCRR 68.4).