OPINION OF THE COURT
Katherine A. Levine, J.
This case presents the novel issue of whether an insurance company must notify prospective medical service providers that it will not reimburse them for any services they may provide to an assignor after a determination has been made, pursuant to an independent medical examination (IME) performed on the assignor, that further medical services are not medically necessary. As will be set forth below, since the notice requirements for verification requests, as contained in 11 NYCRR 65-3.5 and 65-3.6, do not apply to IMEs that are noticed and performed prior to the insurance company’s receipt of claim forms (preclaim IMEs), such notification is not necessary.
Plaintiff Bayside Rehab & Physical Therapy, EC. (plaintiff or Bayside or assignee), a medical service provider, brings this action pursuant to Insurance Law § 5106 (a) seeking to recover $814.19 and $1,131.47 for services it provided to its assignors Aleisha Allen and Angela Allen (collectively referred to as the Allens or assignors), for injuries they sustained in an automobile accident. Bayside moves for summary judgment based upon a claimed prima facie showing that its bills were properly submitted and that the defendant GEICO Insurance Company (defendant or GEICO) failed to pay or deny the claims within 30 days.
Defendant claims that plaintiff is not entitled to summary judgment because it failed to provide adequate proof that its claims were generated or mailed within the regular course of business. In the alternative, defendant argues that plaintiff failed to submit several claims within the statutorily prescribed period of 45 days as prescribed by 11 NYCRR 65-1.1. In its reply papers, plaintiff contends that since the defendant did not notify it about the IME cutoff, it was “not fair” and “not proper” for defendant to issue a denial of claims based upon the IME cutoff. Defendant responded, during oral argument, that because it informed the assignors that no more benefits would be paid as a result of the IME, the assignors were under an obligation to inform any future medical providers of this determination of lack of medical necessity. In light of the above, defendant contends that the matter should proceed to trial.
The Allens were involved in an automobile accident on June 17, 2006. Pursuant to a request by defendant, the assignors *544 underwent IMEs by three different doctors on November 2, 2006. The three doctors determined that no further orthopedic, chiropractic, acupuncture or other types of medical services were medically necessary for the injuries suffered by either Allen related to the accident. Defendant GEICO thereupon terminated all benefits for the various types of medical treatment indicated in the IME reports, effective November 9, 2006. Absent from defendant’s papers is any indication as to how or if defendant notified the assignors of the termination of benefits much less notification of the IME cutoff to plaintiff.
Plaintiff subsequently provided medical services to both assignors in the spring of 2007 and submitted two bills on behalf of Aleisha on May 17, 2007 and June 12, 2007, respectively and three bills on behalf of Angela on May 17, June 6 and June 19, 2007, respectively. Defendant denied the May 17, 2007 bills based on plaintiff’s noncompliance with the 45-day rule and denied all the bills based on lack of medical necessity pursuant to the IME cutoff date of November 9, 2006.
To grant summary judgment, “it must clearly appear that no material and triable issue of fact is presented.” (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 314 [2004, Smith, J., concurring]; Zuckerman v City of New York, 49 NY2d 557 [1980]; see Manhattan Med. Imaging, P.C. v State Farm Mut. Auto. Ins. Co., 20 Misc 3d 1144[A], 2008 NY Slip Op 51844[U] [Civ Ct, Richmond County 2008].) A plaintiff establishes a prima facie entitlement to judgment as a matter of law “by submitting evidentiary proof that the prescribed statutory billing forms ha[ve] been mailed and received, and that payment of no-fault benefits [i]s overdue.” (Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742, 742-743 [2d Dept 2004]; Second Med., P.C. v Auto One Ins. Co., 20 Misc 3d 291, 293 [Civ Ct, Kings County 2008].)
To lay a proper evidentiary foundation on a summary judgment motion that the tendered records were produced within the regular course of a medical provider’s business, plaintiff must provide a supporting affidavit by an individual who possesses personal knowledge of the office practices. (Complete Orthopedic Supplies, Inc. v State Farm Ins. Co., 16 Misc 3d 996, 999 [Civ Ct, Queens County 2007], citing CPLR 4518 [a]; North Acupuncture, P.C. v State Farm Ins. Co., 14 Misc 3d 130[A], 2006 NY Slip Op 52523[U] [App Term, 2d Dept 2006]; Dan Med., EC. v New York Cent. Mut. Fire Ins. Co., 14 Misc 3d 44, 45 [App Term, 2d Dept 2006].) Plaintiff meets this burden by *545 providing an affidavit of its business manager who exhaustively details the record-keeping procedures of the business that created the records and clearly details the dates of the services, the amounts due, and her personal knowledge of the billing practices. (Manhattan Med. Imaging, P.C. v State Farm Mut. Auto. Ins. Co., supra, citing Second Med., P.C. v Auto One Ins. Co., 20 Misc 3d at 294-295.) In addition, the billing manager personally packaged, sealed, applied postage to and mailed the bills. As such, plaintiff has made a prima facie showing of entitlement.
Defendant contends that plaintiff failed to submit several bills within the statutorily required period of 45 days as prescribed by 11 NYCRR 65-1.1. Pursuant to Insurance Law § 5106, a complete proof of claim is a prerequisite to receiving no-fault benefits. All automobile insurance policies issued or renewed after April 5, 2002 are required to include a revised mandatory personal injury protection endorsement which provides that claims for medical treatment must be submitted within 45 days after services are rendered. (11 NYCRR 65-1.1 [b]; 65-2.4 [c]; Rockman v Clarendon Natl. Ins. Co., 21 Misc 3d 1118[A], 2008 NY Slip Op 52093[U], *4 n 2 [Civ Ct, Richmond County 2008], citing Matter of Medical Socy. of State of N.Y. v Serio, 298 AD2d 255 [1st Dept 2002]; Eagle Chiropractic, EC. v Chubb Indem. Ins. Co., 19 Misc 3d 129[A], 2008 NY Slip Op 50525[U] [App Term, 2d Dept 2008].) Where one proof of claim is submitted for several medical treatments, the 45-day period commences the day after the first treatment is rendered. (SZ Med. P.C. v Country-Wide Ins. Co., 12 Misc 3d 52, 55 [App Term, 2d Dept 2006], citing Ops Gen Counsel NY Ins Dept No. 03-06-30 [June 2003].)
Although a health care provider is required to submit its proof of claim within 45 days after the services were rendered, an insurer is precluded from asserting the defense of a provider’s untimely submission of claim if it does not issue a timely denial of claim. (Rockman v Clarendon Natl. Ins. Co., supra, citing Mid Atl. Med., P.C. v Travelers Indem. Co., 12 Misc 3d 147[A], 2006 NY Slip Op 51579[U] [App Term, 1st Dept 2006].) Pursuant to both the Insurance Law and the regulations promulgated by the Superintendent of Insurance, an insurer is required to either pay or deny a claim for no-fault automobile insurance benefits within 30 days from the date an applicant supplies the proof of claim. (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 278 [1997], citing Insurance Law § 5106 [a]; 11 NYCRR former 65.15 [g] [3].)
*546 Here, plaintiff submitted claims on May 17, 2007 for services provided on March 9, 12, 16, 20 and 28, 2007, which is more than 45 days after each service was provided. Furthermore, since defendant timely denied these claims on May 30, 2007, within 30 days of their receipt, defendant is entitled to assert its defense that the claims were untimely submitted.
As to plaintiffs contention that the denial based upon the IME cutoff was somehow unfair or defective since defendant assignee never notified plaintiff about the IME cutoff based on lack of medical necessity, an analysis of precedent on what if any notification requirements attach to preclaim IMEs is in order. This issue was recently addressed by this court in Prime Psychological Servs., P.C. v Nationwide Prop. & Cas. Ins. Co. (24 Misc 3d 230 [2009]) wherein the court found that the notice requirements for verification requests, as contained in 11 NYCRR 65-3.5 and 65-3.6, do not apply to examinations under oath (EUOs) that are noticed prior to the insurance company’s receipt of claim forms (preclaim EUOs). The same reasoning applies to preclaim IMEs.
The insurance regulations provide for IMEs and EUOs as part of an insurer’s “entitlement to ‘additional verification’ following the insurer’s receipt of a provider’s statutory claim forms.” (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18, 19 [App Term, 2d Dept 2004], affd in part 35 AD3d 720 [2d Dept 2006]; see 11 NYCRR 65-1.1 [d]; 65-3.5 [d]; see also All-Boro Med. Supplies, Inc. v Progressive Northeastern Ins. Co., 20 Misc 3d 554 [Civ Ct, Kings County 2008]; Lumbermens Mut. Cas. Co. v Inwood Hill Med., P.C., 8 Misc 3d 1014[A], 2005 NY Slip Op 51101[U] [Sup Ct, NY County 2005]; Inwood Hill Med. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [Civ Ct, NY County 2004].) Where an EUO or IME is requested as additional verification after receipt of the claim, the insurer must schedule the IME within the same time frame as medical examinations — within 30 days from the date of receipt of the prescribed verification form (11 NYCRR 65-3.5 [d]) — and must schedule an EUO within a reasonable time frame and as “expeditiously as possible.” (Eagle Surgical Supply, Inc. v Progressive Cas. Ins. Co., 21 Misc 3d 49, 51 [App Term, 2d Dept 2008].)
11 NYCRR 65-3.6 (b) provides that if the requested postclaim verification
“has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, *547 within 10 calendar days, follow up with the party from whom the verification was requested, either by telephone call . . . or by mail. At the same time the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.” (Emphasis added.)
“A claim need not be paid or denied until all demanded verification is provided” (New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2d Dept 2004]; see Insurance Law § 5106 [a]; 11 NYCRR 65-3.5 [c]; 65-3.8 [a] [1]).
In addressing whether these requirements applied to preclaim EUO requests, this court looked to Stephen Fogel Psychological (supra), where the Appellate Term found that an insurer had the right to conduct an IME prior to its receipt of the statutory claim form or its statutory equivalent which “under the regulations, triggers the verification process.” (7 Misc 3d at 20-21.) The Stephen Fogel Psychological court then found that the right to an IME “at this juncture is not afforded by the verification procedures and timetables” because section 65-1.1 (d) “is not, on its face or contextually, a ‘verification’ provision, and because the detailed and narrowly construed verification protocols are not amenable to application at a stage prior to submission of the claim form.” (Id. at 21.) The only party that needed to be notified of the preclaim IME was the assignor-injured party. (Stephen Fogel Psychological, 35 AD3d at 721.) In All-Boro Med. Supplies, Inc. v Progressive Northeastern Ins. Co. (20 Misc 3d 554 [2008]), Judge Sweeney extended this reasoning to EUOs, finding that an insurance company acted within its rights under the endorsement by scheduling an EUO before it had received the claim.
Based upon the above, this court, in Prime Psychological Servs. (supra), found that the postclaim notice requirements did not apply to preclaim EUOs, or by analogy to the instant matter, to preclaim IMEs, and that it therefore was of no consequence that neither the insurer’s Special Investigation Unit investigator nor its claims representative mentioned whether the EUO notices were sent to the assignor’s attorney. As such, this court determined that an insurer’s timely denial of a claim, based upon an insured’s failure to appear for a preclaim EUO, which constitutes a breach of a condition precedent to payment, is a valid ground upon which to award summary judgment to the defendant.
*548 The same analysis governs what, if any, notice requirements attach to IME cutoff determinations based upon a lack of medical necessity. Where such a determination is made prior to the submission of a claim, there is no statutory requirement as to whom the insurer has to notify. Even the postverification notice requirements, which are inapplicable to preclaim EUOs and IMEs, do not mandate that the assignee medical provider be notified.* 11 NYCRR 65-3.5 (e) discusses where EUOs and IMEs are to be held and then sets forth that “[t]he insurer shall inform the applicant at the time the examination is scheduled that the applicant will be reimbursed.” The term “applicant” within the context of 11 NYCRR 65-3.5 (e) specifically refers to the injured party (the assignor). (East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202 [2d Dept 2009].) 11 NYCRR 65-3.6, entitled “Follow-up requirements,” which was ruled upon in Prime Psychological Servs. (supra), refers to the eligible injured person as the applicant in subdivision (a) where it mandates that insurers mail a second application for motor vehicle no-fault benefits to the “eligible injured person.”
Second, from a purely logical vantage point, it would be an exercise in futility to require an insurance company to send a preclaim IME cutoff notice to the assignee since, by definition, an insurance company cannot prophesize which medical service entity, out of the hundreds which exist in the metropolitan area, an injured party might seek services from. Statutory construction must be sought which is “consistent with achieving [the statute’s] purpose and with justice and common sense.” (Freeman v Kiamesha Concord, 76 Misc 2d 915, 920 [Civ Ct, NY County 1974].) The courts are to adopt a construction of a statute “which will not cause objectionable results, or cause inconvenience ... or absurdity.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141, at 281; Matter of Medical Socy. of State of N.Y.v State of N.Y. Dept. of Health, 83 NY2d 447, 451-452 [1994].) The common mandate of statutory construction is to assume that the Legislature “did not intend a patently absurd result.” (Covington v Walker, 307 AD2d 908, 909 [2d Dept 2003, *549 Feuerstein, J., dissenting]; see Statutes § 145; see In re Adamo, 619 F2d 216, 219 [2d Cir 1980].)
Here, the IME was conducted and the IME cutoff date became effective approximately six months before the Allens even sought treatment from, much less assigned their benefits to, plaintiff. Hence, it would be absurd to require defendant to notify this particular plaintiff provider about the IME cutoff as it had no way of discerning that the Allens might seek treatment at this provider at some date in the future. Plaintiff implicitly concedes that the Allens were notified of the IME cutoff date by contending that the “IME cut-off was never advised to assignee” and that the “IME exam was kept secret from the assignee” until the denial (reply ¶ 10). Since the Allens attended the IMEs and apparently knew that their no-fault benefits were cut off, they were under an obligation to inform plaintiff and any other medical provider from whom they sought treatment of this cutoff.
In light of the above, and the timely denials submitted by defendants, plaintiffs motion for summary judgment is denied and this case will proceed to trial.

 Parenthetically, in the one apparent case that discusses this issue, the court held that either the medical service provider or the assignor must be notified about the IME cutoff. (Mollins v GEICO, 15 Misc 3d 1103[A], 2007 NY Slip Op 50467[U] [Civ Ct, NY County 2007].) This case, however, provides little guidance since the IME and subsequent cutoff date occurred at or about the same time that the services were rendered at the medical service provider.